UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

_____

| | |
|---|---|
| MERRILL STEINBERG, Individually and On Behalf of All Others Similarly Situated, | ) ) ) **CIVIL ACTION NO. 07-CV-9615-RPP** |
| Plaintiff, | ) ) "ECF CASE" |
| vs. | ) |
| ERICSSON LM TELEPHONE CO., CARL-HENRIC SVANBERG and KARL-HENRIK SUNDSTROM, | ) ) ) |
| Defendants. | ) |

_____

| | |
|---|---|
| STATE-BOSTON RETIREMENT SYSTEM, Individually and On Behalf of All Others Similarly Situated, | ) ) ) **CIVIL ACTION NO. 07-CV-10659-RPP** |
| Plaintiff, | ) "ECF CASE" |
| vs. | ) |
| ERICSSON LM TELEPHONE CO., CARL-HENRIK SVANBER and KARL-HENRIK SUNDSTROM, | ) ) ) |
| Defendants. | ) |

_____

**JACQUES FURHER'S MEMORANDUM OF LAW IN REPLY TO THE
INSTITUTIONAL INVESTOR GROUP'S MOTION
TO BE APPOINTED LEAD PLAINTIFF**

**TABLE OF CONTENTS**

INTRODUCTION .................................................................................................................. 1

ARGUMENT ......................................................................................................................... 2

    POINT I
        MR. FURHER IS THE ONLY MOVANT WHO IS BOTH
        ADEQUATE AND HAS LOSSES .................................................................................. 2

    POINT II
        THE INSTITUTIONAL INVESTORS ARE NOT A GROUP ............................................. 5

    POINT III
        THE INDIVIDUAL MEMBERS OF THE
        INSTITUTIONAL INVESTOR GROUP ARE DISQUALIFIED ......................................... 6

    POINT IV
        MR. FURHER IS THE ONLY MOVANT WHO DOES NOT
        SUFFER FROM UNIQUE DEFENSES .......................................................................... 8

CONCLUSION ....................................................................................................................... 9

**INTRODUCTION**

Lead Plaintiff movant Jacques Furher respectfully submits this memorandum of law in reply to the opposition memorandum of the Institutional Investor Group.[1]  Mr. Furher requests that he be appointed lead plaintiff in this consolidated securities class action and requests that his counsel, Murray, Frank & Sailer LLP ("Murray Frank"), be appointed lead counsel.

Mr. Furher is a sophisticated investor who, as head of Drifton Finance Corporation, has previously been appointed lead plaintiff in *Nursing Home Pension Fund, et al v. Oracle Corp., et al*, Civ. No. 3:01-cv-00988-MJJ, an action pending in the Northern District of California, and he has suffered losses of $1,080,000 as a result of Defendants' fraud.  Mr. Furher is the ideal Lead Plaintiff for this action.

The Institutional Investor Group is disqualified from appointment as a lead plaintiff because:

- The Institutional Investor Group is comprised of wholly unrelated entities with no prior joint litigation experience or demonstrable cohesiveness, and should not be considered for appointment as lead plaintiff.  Indeed, the only prior relationship that these entities have is one of antagonism, not cooperation.

- Not only is the Institutional Investor Group unsuitable as a lead plaintiff group, but each of the individual members themselves are inadequate to be lead plaintiff because they individually chose to be a member of a group.

- The Institutional Investor Group has improperly manipulated the class period to maximize its losses demonstrating that it is lawyer created and lawyer driven.

---

[1] The Institutional Investor Group is comprised of (i) The City of Edinburgh Council on behalf of The Lothian Pension Fund ("Lothian"); (ii) Fortis Investment Management N.V./S.A. ("Fortis Investments"); (iii) Deka Investment GmbH ("Deka"); and (iv) State-Boston Retirement System ("Boston").

- Deka and Lothian, as foreign investors, are subject to unique defenses which preclude their acting as Lead Plaintiff.

- Deka is disqualified from acting as lead plaintiff by submitting a deficient and incomplete certification.

- Fortis is inadequate to be lead plaintiff because it is a net seller of Ericsson securities during the class period.

- Boston has no transactions in Ericsson securities during the class period, and accordingly has no standing to be lead plaintiff.

In light of these known deficiencies and inadequacies, the Institutional Investor Group attacks Mr. Furher falsely stating that his losses are insufficient and improperly calculated. Not only are Mr. Furher's losses substantial, the method of calculating those losses has long been accepted. Moreover, because the Institutional Investor Group and its individual members cannot act as Lead Plaintiffs, Mr. Furher is the only adequate lead plaintiff. Finally, despite the protests of the Institutional Investor Group, Mr. Furher's options transactions do not "raise unique defenses," as courts have long recognized the ability of options traders to act as Lead Plaintiffs.

## ARGUMENT

## POINT I

### MR. FURHER IS THE ONLY MOVANT WHO IS BOTH ADEQUATE AND HAS LOSSES

The Institutional Investor Group argues that Mr. Furher's losses are not properly calculated because his calculation is not performed in "the way in which such calculations are usually done." Institutional Investor Group Opp. Mem. at 7. The Institutional Investor Group is wrong. First, the Private Securities Litigation Reform Act of 1995 ("PSLRA") provides no definitive method for calculating losses. *In re Cardinal Health, Inc. Sec. Litig.*, 226 F.R.D. 298,

302 (S.D. Ohio 2005); *In re Cigna Corp. Sec. Litig.*, 459 F. Supp. 2d 338, 350 (E.D. Pa. 2006) ("Rule 10b-5 and the PSLRA do not endorse any economic theory or methodology that should be used to quantify/demonstrate economic loss."). Second, Mr. Furher's loss analysis is not novel. The same formula was performed on behalf of Drifton Finance Corporation ("Drifton") in *Nursing Home Pension Fund, et al v. Oracle Corp., et al*, Civ. No. 3:01-cv-00988-MJJ, doc. no. 21, Exhibit A (attached hereto as Exhibit A). The Court appointed Drifton as co-lead plaintiff in that case, impliedly accepting Drifton's loss analysis. *Id.*, doc. no. 37, at 1, 5 (attached hereto as Exhibit B).

      Mr. Furher's calculation is also a matter of common sense. Unlike common stock, where the transactions are fungible and matching a purchase transaction to a sale transaction is impossible except in the simplest of cases, purchases and sales of options contracts can be matched up based on the unique signifiers that mark the option market, such as strike price and expiration date of the contracts. For example, on August 28, 2007, Mr. Furher sold 100 call contracts (representing 10,000 common shares) on the DLC Stock Exchange with a strike price of $35, expiring in September (the "September $35 Calls"). Furher Opp., Exhibit C, at 1. On September 19, 2007, Mr. Furher purchased 100 call contracts on the same exchange with the same strike price and expiration date, thereby closing his position in September $35 Calls. *Id*. In this case, because these transactions are the only transactions in September $35 Calls, they must be matched up directly, and the traditional LIFO or FIFO analysis is unnecessary.

      The true issue is how to value the losses from those option contracts that were exercised against Mr. Furher. The best method, a method accepted by the Court in *Oracle*, is to ignore the forced transactions (*i.e.* the forced purchase and sale) and to use the 90-Day Look Back price to

determine the actual difference in the premium paid or received and the true value of Mr. Furher's options.

For example, on September 19, 2007, Mr. Furher sold 50 put contracts (representing 5,000 common shares) on the DLC Stock Exchange with a strike price of $42.50, expiring in January (the "January $42.50 Puts") for a premium of $4.12 and total proceeds of $20,600. Furher Opp., Exhibit C, at 3. On October 18, 2007, after the fraud was disclosed, Mr. Furher partially closed his open position by repurchasing 5 of the January $42.50 Puts for $12.90. *Id*. However, the remaining 45 January $42.50 Puts were exercised against him, forcing Mr. Furher to buy 4,500 common shares at $42.50. *Id*.

The proper measure of damages for the remaining 45 January $42.50 Puts is not the losses from the forced transactions (as that would allow for double counting) but the additional premium that Mr. Furher would have received on the sale of these options on September 19, 2007, if the price of Ericsson common stock was not inflated as a result of Defendants' fraud. This additional premium is the difference between the strike price of the options and the un-inflated value of the stock, represented by the 90-day average. *See* Furher Opp. Exhibit C, at 3. *See Deutschman v. Beneficial Corp.*, 132 F.R.D. 359, 371 (D. Del. 1990) ("[T]he market price of the underlying security may affect the premium at which the option holder is able to resell the option contract and the desirability of exercising the option by purchasing the shares at the striking price prior to the expiration date *vis-a-vis* allowing the option to expire."). As explained in Exhibit C to the Furher Opp., based on the intrinsic value of the option set by the 90-Day Look Back of $15.49, Mr. Furher's losses on his sale of the 50 January $42.50 Puts is $55,555.

## POINT II

### THE INSTITUTIONAL INVESTORS ARE NOT A GROUP

The Institutional Investor Group's primary argument is that it should be appointed lead plaintiff because it has the largest financial interest in the litigation. The Institutional Investor Group claims that Mr. Furher's losses of $1,080,000 are insufficient because the Institutional Investor Group's losses are "sixteen times" greater. Institutional Investor Group Opp. Mem at 2. But the Institutional Investor Group was created for the sole purpose of making this lead plaintiff motion. There is no business or other relationship among its four members, the four members may have spoken, but for the sole purpose of creating their "group," and there is unlikely to be further contact. This is not a "group" under the PSLRA.

Southern District of New York courts have refused to allow such "groups" to aggregate their losses. *See In re Pfizer Inc. Sec. Litig.*, 233 F.R.D. 334, 336 (S.D.N.Y. 2005) (Owen, J.) ("Several of the putative plaintiffs are aggregated into artificial "groups." Nothing before the Court indicates that this aggregation is anything other than an attempt to create the highest possible "financial interest" figure under the PSLRA. *See* 15 U.S.C. § 78u-4(a)(3)(B)(iii)(I)(bb), and I reject it."); *see also In re Tarragon Corp. Sec. Litig.*, CA No. 07 CIV 7972(PKC), 2007 WL 4302732, at *2 (S.D.N.Y. Dec. 6, 2007) (Castel, J.) (denying motion by unrelated institutional investors); *In re Veeco Instruments, Inc. Sec. Litig.*, 233 F.R.D. 330, 334 (S.D.N.Y. 2005) (McMahon, J.) ("Courts (including this one) view [] aggregations of individual shareholders with disapproval."); *Barnet v. Elan Corp.*, PLC, Case Nos. 05 Civ. 2860 (RJH) and 05 Civ. 3166 (RJH), 2005 U.S. Dist. LEXIS 16388, *14-15 (S.D.N.Y. August 8, 2005) (Holwell, J.) (a group consisting of six unrelated entities was selected as lead plaintiff because <u>its individual members</u> had the largest financial interest: "This is simply not a case where a group of

unrelated investors has been cobbled together as a "group" to displace a single competing institutional investor, or a smaller, closely-related group of investors.  If it were, the Court would be reluctant to recognize the group under the statute."); *In re eSpeed, Inc. Sec. Litig.*, Case No. 05 Civ. 2091 (SAS), 2005 U.S. Dist. LEXIS 14104, at *12-13 (S.D.N.Y. July 13, 2005) (Scheindlin, J.) (appointing a <u>family</u> group with greater losses than an institution as lead plaintiff, but refusing to aggregate a non-family member's losses with the family: "If the Adib family is dependent upon Weber's losses to establish aggregate losses greater than the Pension Fund's, then Weber will not be considered as part of the Adib Group, and the Pension Fund will be named presumptive lead plaintiff, assuming it can satisfy the requirements of Rule 23(a).").

Indeed, the only prior relationship that the members of the Institutional Investors Group have is one of antagonism, not cooperation.  *See In re General Motors Sec. Litig.*, Civ. No. 1:50-cv-08088 (JES), doc. nos. 18-20; 22-24; 28-30; 31-34; 36-37; 59-65 (S.D.N.Y.) (demonstrating the adversarial relationship between Deka and Fortis in their battle to be lead plaintiff in the General Motors securities litigation).

### POINT III

#### THE INDIVIDUAL MEMBERS OF THE INSTITUTIONAL INVESTOR GROUP ARE DISQUALIFIED

Beyond disqualifying the group as a lead plaintiff, courts have also disqualified the members of the group from individually acting as lead plaintiffs, even when a member has the greatest losses, because that member chose to act as a member of a group. *Bhojwani v. Pistiolis*, 06-cv-13761(CM)(KNF), 2007 WL 2197836, at *5, *6 (S.D.N.Y. July 31, 2007) (Fox, M.J.) ("possibility that lawyers formed these groups 'to manipulate the selection process, and thereby gain control of the litigation' is too great to be disregarded because such machinations are

6

precisely what PSLRA was enacted to restrict." And finding that individual who moved alone only adequate movant.).[2]

Moreover, as set forth in Mr. Furher's Opposition Memorandum, each if the individual members of the Institutional Investor Group suffers from unique defenses that preclude them from acting as lead plaintiffs.  For example, Deka and Lothian, as foreign investors, are subject to unique defenses which preclude their acting as Lead Plaintiff. See *Borochoff v. GlaxoSmithKline PLC*, 246 F.R.D. 201, 205 (S.D.N.Y. 2007) (Stanton, J.) (holding that "possibility that foreign courts will not enforce a decision in favor of" defendant, raised significant concerns and "prudence cautions that the arguments for its exclusion are substantial, and in light of that risk it would be improvident to appoint the German Institutional Investor Group [including Deka] as lead plaintiff"); *In re Vivendi Universal S.A. Sec. Litig.*, 242 F.R.D. 76, 105 (S.D.N.Y. 2007) (Holwell, J.) (refusing to certify a similarly situated German investor under Rule 23, reasoning "plaintiffs have not shown a probability that German courts will give *res judicata* effect to a judgment in this case"); *In re Royal Ahold N.V. Sec. & ERISA Litig.*, 219 F.R.D. 343 (D. Md. 2003) (refusing to appoint German lead plaintiff in a case against a foreign corporation).

Deka also submitted a deficient and incomplete certification. *See* Furher Opp., at 11. Such a defective certification, standing alone, is grounds for finding a lead plaintiff movant inadequate. *See In re Eaton Vance Corp. Sec. Litig.*, 219 F.R.D. 38, 42 (D. Mass. 2003*); In re SafeGuard Scientifics*, 216 F.R.D. 577, 582 n.4 (E.D. Pa. 2003). Finally, Fortis is inadequate to be lead plaintiff because it is a net seller of Ericsson securities during the class period, *see* Furher

---

[2] The fact that the Institutional Investor Group improperly manipulated the class period to maximize its losses demonstrates that Magistrate Judge Fox's concerns that groups may lead to lawyer driven cases was well-founded. *See* Furher Op.. at 6-7; *Piven v. Sykes Enterprises, Inc.*, 137 F. Supp. 2d 1295, 1303 (M.D. Fla. 2000) (courts calculate losses using the class period defined in the first action filed).

Opp., at 14; *Capone v. MBIA, Inc.*, 50 Civ. 3514 (LLS), slip op. at 4 (S.D.N.Y. July 25, 2005) (Stanton, J), and Boston has no transactions in Ericsson securities during the initial class period. *See* Furher Opp. at 15; *In re AIG Advisor Group*, No. 06 CV 1625(JF), 2007 WL 1213395, at *4 (E.D.N.Y. April 25, 2007).

## POINT IV

### MR. FURHER IS THE ONLY MOVANT WHO DOES NOT SUFFER FROM UNIQUE DEFENSES

Rather than address their own deficiencies, the Institutional Investor Group raises a whole cloth allegation that Mr. Furher faces unique defenses because of his forced purchases and sales of Ericsson common stock. Institutional Investor Group Opp. at 8-9. However, as stated clearly above and in Exhibit C to Mr. Furher's Opposition Brief, Mr. Furher's forced transactions are not a part of his loss calculations and thus would raise no issue regarding individual issues of reliance that the Institutional Investor Group suggests. Despite Institutional Investor Group's empty assertion that Mr. Furher did not rely upon the market "[o]ption traders and other traders of securities aside from the shares of stock themselves may use the fraud-on-the-market presumption of reliance absent special circumstances compelling a different result." *In re Priceline.com Inc.* 236 F.R.D. 89, 99 (D. Conn. 2006) (appointing an option trader as class representative, overriding objections that there existed "unique defenses").[3]

---

[3] The Institutional Investor Group's reliance on *Landry v. Price Waterhouse Chartered Accountants*, 123 F.R.D. 474, 476 (S.D.N.Y. 1989) (Edelstein, J.) is without merit in that that case was decided before enactment of the PSLRA and was based on admissions of the movant regarding reliance. There is no such evidence here.

8

## CONCLUSION

The Institutional Investor Group suffers from numerous deficiencies, including using an inappropriate class period manipulated to provide a favorable damages calculation, aggregating the damages of four entities in an impermissible group, filing a defective certification, and moving with parties with no standing or losses. The Institutional Investor Group's motion should be denied and Mr. Furher should be appointed Lead Plaintiff and his selection of Murray, Frank & Sailer LLP as Lead Counsel for the Class should be approved by the Court.

Dated: January 30, 2008
      New York, New York

**MURRAY, FRANK & SAILER LLP**

By:    /s/
     Brian Murray (BM 9954)
Lawrence D. McCabe (LM 1846)
Brian Brooks (BB 7442)
275 Madison Avenue, 8th Floor
New York, New York 10016
Telephone: (212) 682-1818
Facsimile: (212) 682-1892

**Proposed Lead Counsel for the Class**

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on January 30, 2008, I caused to be electronically filed the foregoing JACUES FURHER'S MEMORANDUM OF LAW IN REPLY TO THE INSTITUTIONAL INVESTOR GROUP'S MOTION TO BE APPOINTED LEAD PLAINTIFF with the Clerk of the Court by using the CM/ECF system which will send a notice of electronic filing to counsel of record.

I FURTHER CERTIFY that I caused the foregoing document and the notice of electronic filing by first-class mail to the following non-CM/ECF participants:

N/A

**MURRAY, FRANK & SAILER LLP**

By: _____/s/_____
Brian Murray (BM 9954)
Lawrence D. McCabe (LM 1846)
Brian Brooks
275 Madison Avenue, 8th Floor
New York, New York 10016
Telephone: (212) 682-1818
Facsimile: (212) 682-1892

**Proposed Lead Counsel for the Class**