UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

MERRILL STEINBERG, Individually and On Behalf
of All Others Similarly Situated,

Plaintiff,

v.

ERICSSON LM TELEPHONE CO., CARL-HENRIC
SVANBERG and KARL-HENRIK SUNDSTROM,

Defendants.

Civil Action No. 07-cv-9615

Judge Robert P. Patterson

**Oral Argument Requested**

### DEFENDANTS' REPLY MEMORANDUM OF LAW
### IN FURTHER SUPPORT OF THEIR MOTION TO DISMISS
### PLAINTIFF'S CONSOLIDATED AMENDED COMPLAINT

PAUL, WEISS, RIFKIND, WHARTON &
GARRISON LLP

Susanna M. Buergel
Charles E. Davidow
Brad S. Karp
Daniel J. Kramer
Richard A. Rosen

1285 Avenue of the Americas
New York, NY 10019-6064
Telephone: (212) 373-3000
Fax: (212) 492-0020

*Attorneys for Defendants*

# TABLE OF CONTENTS

**Page(s)**

I.   Plaintiff Fails To Allege Any Misleading Statements ........................................................ 1

    A.   Plaintiff Fails To Plead A Misleading Statement Regarding AT&T .................... 2

    B.   Plaintiff Fails To Plead A Misleading Statement Regarding New Contracts ......... 3

    C.   Plaintiff Fails To Plead A Misleading Statement Regarding "Seasonal" Results.................................................................................................................. 4

II.  Plaintiff Fails To Plead Facts Establishing A Strong Inference Of Scienter ...................... 5

    A.   Plaintiff Has Not Alleged Facts To Support An Inference That Defendants Knew Or Should Have Known That Any Of Their Statements Was False ............ 6

    B.   Plaintiff's Circumstantial Allegations Of Scienter Are Insufficient...................... 7

III. Svanberg And Sundstrom Should Be Dismissed For Lack Of Personal Jurisdiction......... 9

IV.  Plaintiff Should Not Be Granted Leave To Replead ....................................................... 10

Conclusion .............................................................................................................................. 10

# TABLE OF AUTHORITIES

**Page(s)**

CASES

*American Fin. Capital Corp. v. Princeton Elec. Prods.*,
   No. 95 Civ. 4568, 1996 WL 131145 (E.D. Pa. Mar. 20, 1996) ................................9

*ATSI Commc'ns Inc. v. Shaar Fund, Ltd.*,
   493 F.3d 87 (2d Cir. 2007) ...............................................................................5

*Bovee v. Coopers & Lybrand*,
   272 F.3d 356 (6th Cir. 2001) ...........................................................................4

*Chill v. General Elec. Co.*,
   101 F.3d 263 (2d Cir. 1996) .............................................................................10

*City of Sterling Heights Police and Fire Ret. Sys. v. Abbey Nat'l, PLC*,
   423 F. Supp. 2d 348 (S.D.N.Y. 2006) ..............................................................7

*Cosmas v. Hassett*,
   886 F.2d 8 (2d Cir. 1989) ............................................................................7, 8

*Dale v. Banque Alliance S.A.*,
   No. 02 Civ. 3592 (RCC) (KNF), 2004 WL 2389894 (S.D.N.Y. Oct. 22, 2004) ......................9

*Elam v. Neidorff*,
   502 F. Supp. 2d 988 (E.D. Mo. 2007) ..............................................................9

*Fezzani v. Bear, Stearns & Co., Inc.*,
   No. 99 Civ. 0793 (RCC), 2005 WL 500377 (S.D.N.Y. March 2, 2005) ...............................10

*Fox v. Boucher*,
   794 F.2d 34 (2d Cir. 1986) ..............................................................................9

*Goplen v. 51job, Inc.*,
   453 F. Supp. 2d 759 (S.D.N.Y. 2006) ..............................................................7

*Greebel v. FTP Software, Inc.*,
   194 F.3d 185 (1st Cir. 1999) ...........................................................................6

*Hecco Ventures v. Avalon Energy Corp.*,
   606 F. Supp. 512 (S.D.N.Y. 1985) ..................................................................3

*In re AstraZeneca Sec. Litig.*,
   559 F. Supp. 2d 453 (S.D.N.Y. 2008) ..............................................................9

*In re Atlas Air Worldwide Holdings, Inc. Sec. Litig.*,
   324 F. Supp. 2d 474 (S.D.N.Y. 2004) ...........................................................7, 8

*In re Elan Corp. Sec. Litig.,*
    543 F. Supp. 2d 187 (S.D.N.Y. 2008)................................................................................2

*In re Loral Space & Commc'ns Ltd. Sec. Litig.,*
    No. 01 Civ. 4388 (JGK), 2004 WL 376442 (S.D.N.Y. Feb. 27, 2004) ...................................6

*In re Nokia Oyj (Nokia Corp.) Sec. Litig.,*
    423 F. Supp. 2d 364 (S.D.N.Y. 2006)..............................................................................10

*In re Read-Rite Corp. Sec. Litig.,*
    335 F.3d 843 (9th Cir. 2003) .........................................................................................7

*Kowal v. MCI Commc'ns Corp.,*
    Civ. A. No. 90-2862 (JGP), 1992 WL 121378 (D.D.C. May 20, 1992)...................................2

*Mississippi Pub. Employees' Ret. Sys. v. Boston Scientific Corp.,*
    523 F.3d 75 (1st Cir. 2008).............................................................................................8

*Novak v. Kasaks,*
    216 F.3d 300 (2d Cir. 2000)............................................................................................6

*Rombach v. Chang,*
    355 F.3d 164 (2d Cir. 2004)............................................................................................1

*San Leandro Emergency Med. Group Profit Sharing Plan v. Philip Morris Cos., Inc.,*
    75 F.3d 801 (2d Cir. 1996).............................................................................................6

*Serabian v. Amoskeag Bank Shares, Inc.,*
    24 F.3d 357 (1st Cir. 1994)............................................................................................6

*Tellabs, Inc. v. Makor Issues & Rights, Ltd.,*
    127 S. Ct. 2499 (2007)..................................................................................................5

*Tuchman v. DSC Commc'ns Corp.,*
    14 F.3d 1061 (5th Cir. 1994) .........................................................................................2

Plaintiff's Complaint charges that Defendants made more than a dozen "misleading" statements at a September 11 technology conference in London.  Tellingly, in response to Ericsson's motion to dismiss, Plaintiff has given up on all but three: (1) a statement about Ericsson's business with AT&T; (2) a reference to 50 new customers; and (3) the use of the word "seasonal" to describe Ericsson's 3Q07.  This Court should dismiss Plaintiff's Complaint, with prejudice, because any reasonable reading of the transcript and related materials from the conference demonstrates that these statements were accurate, and because Plaintiff has not pleaded any facts showing that Defendants had the requisite intent to defraud.

## I.    Plaintiff Fails To Allege Any Misleading Statements

In his zeal to portray the three remaining statements at issue in this case as providing a materially misleading impression of Ericsson's projected 3Q07 results, Plaintiff disregards what the speakers actually said.  Illustrative of the liberties Plaintiff has taken is his argument that Ericsson provided financial projections based upon unreasonable revenue assumptions.  Thus, for example, Plaintiff repeatedly charges that "the September 11 Conference projection 'was an astonishing, astronomical figure.'"  (Cmplt. ¶¶ 54; Pl. Op. 4.)  Notably missing from the Complaint, however, is *any* allegation identifying *any* projection for 3Q07 made at the September 11 conference.  The fact is that the conference did not focus on Ericsson's short-term economic performance and, as we show below, Defendants' statements could not have remotely misled anyone about Ericsson's 3Q07 results.

Plaintiff also relies on the wrong legal standard.  It is not the law, as Plaintiff argues, that a plaintiff "does not need detailed factual allegations" and need do no more than "raise a right to relief above the speculative level."  (Pl. Op. 9-10.)  Under the PSLRA, a plaintiff alleging statements are misleading "must demonstrate with specificity why and how that is so."  *Rombach v. Chang*, 355 F.3d 164, 174 (2d Cir. 2004).   Plaintiff fails to meet this standard.

### A.     Plaintiff Fails To Plead A Misleading Statement Regarding AT&T

Plaintiff alleges that even though AT&T (which represented 60% of Ericsson's U.S. sales) had reduced its business with Ericsson in 2007, Defendants led investors to believe otherwise at the conference. Any fair reading of the transcript shows that this simply is untrue.

Defendants made the following statements at the September 11 conference with respect to those sales:

- North American sales had declined by 31% in the first half of 2007 (Kaye Decl. Ex. D, at slide 19);

- "U.S. has been a bit of a rollercoaster with this large Cingular [AT&T] contract. Right now, we're sort of a little bit in the middle—little bit between bigger contracts, but nevertheless that's where it was at the end [of the second quarter, referring to the slide just noted showing 31% decline in sales]" (Kaye Decl. Ex. C, at 8); and

- In response to a question, "They [AT&T] have been a bit slower this year and if you talk to them they will probably even say publicly that they've been so focused on all the mergers and so on, so they haven't been too much into expanding networks." (*Id.* at 28.)

Lifting the allegedly actionable statement from this larger context, Plaintiff ignores the first two of these statements, and argues that the use of the phrase "a bit slower" constitutes fraud because sales to AT&T were likely to be between $1.5 billion and $1.8 billion in 2007, down from $2.2 billion in 2006. (Pl. Op. 3-4.) [1] Plaintiff's offense at Defendants' choice of adjectives, particularly when considered in isolation, does not lead to the conclusion that Defendants' statement is false. *Tuchman v. DSC Commc'ns Corp.*, 14 F.3d 1061, 1069 (5th Cir. 1994) (defendants are "under no duty to employ the adjectorial characterization that the plaintiffs believe is more accurate") (internal citations omitted). [2] Considered together, as is required, Defendants'

---

[1]  The sole basis for Plaintiff's claim that AT&T revenue would be "close to $1.5 billion to $1.8 billion" is CS3. CS3, however, held a non-financial position three levels of seniority removed from the CEO of the North American division, who was another level removed from Defendants, and CS3 is not able to cite any documents that support his claim. This does not provide a sufficient basis to credit the allegation. *See In re Elan Corp. Sec. Litig.*, 543 F. Supp. 2d 187, 220 (S.D.N.Y. 2008) (rejecting CS who was not "in a position to have knowledge regarding communications with Elan senior management").

[2]  *See also Kowal v. MCI Commc'ns Corp.*, Civ. A. No. 90-2862 (JGP), 1992 WL 121378, at *4 (D.D.C. May 20, 1992) ("The focus of the securities laws is on the disclosure of facts;

statements that the AT&T business was "a bit slower," sales were a "a bit of a rollercoaster," they were between contracts, and U.S. sales were down 31% in the first half as a result, would not have misled a reasonable investor with respect to the status of Ericsson's AT&T relationship.

In fact, Defendants disclosed exactly the decline that Plaintiff alleges they failed to disclose. In alleging that Defendants should have disclosed that sales would be between $1.5 billion and $1.8 billion in 2007, compared to $2.2 billion in the prior year, Plaintiff is describing a decline of between 18.2% and 31.8%. Defendants' disclosed figure of a 31% sales decline captured the *negative* end of the range Plaintiff asserts should have been disclosed.[3]

### B.    Plaintiff Fails To Plead A Misleading Statement Regarding New Contracts

Plaintiff alleges that Defendant Svanberg deceived investors by referring to "50 new contracts" when, according to Plaintiff's CSs, the contracts were with small companies and would not result in 3Q07 revenues. (Cmplt. ¶ 50; Pl. Op. 5-6, 12-13.) Once again, Plaintiff disregards the actual statements that Svanberg made.

What Svanberg actually said, according to the transcript, was:

> A lot of HSPA rollouts in the pipeline. Actually more than 50 operators are now being added to the list, will be added to the list as in the near future. Lots of countries that you see there and this goes beyond just the developing markets, developed markets. And here we talk about roll outs throughout Latin America and Russia and India as part of, for example, the DS&L contract—although licenses and frequencies are not yet awarded, but it will come rather quickly in India as well.

(Kaye Decl. Ex. C, at 4.) Accompanying this statement was a slide elaborating: "Major HSPA rollouts in pipeline—more than 50 operators; e.g. Brazil, Kenya, Macau, Mexico, Nigeria, Russia, Thailand, Ukraine and Uruguay." (Kaye Decl. Ex. D, at slide 5.)

---

characterizations of or conclusions drawn from those facts are matters that are left to the judgment of investors."); *Hecco Ventures v. Avalon Energy Corp.*, 606 F. Supp. 512, 518-19 (S.D.N.Y. 1985) (no duty to disclose "pejorative characterizations" of a company's prospects.).

[3]  Plaintiff tries to minimize the import of Defendants' statement that North American revenue had declined 31% in the first half of 2007 by referring to it as "fine print in a background slide." (Pl. Op. 22.) But the graphic showing "**NA, 6.1b, -31%**" appears in large type at the center of the slide. (Kaye Decl. Ex. D, at slide 19.)

Plaintiff's argument that, by this reference, Svanberg was predicting increased

3Q07 revenues, is flatly inconsistent with the statement.  Svanberg did not mention *anything* about

how or whether new HSPA rollouts would impact Ericsson's 3Q07 financial results.  Moreover,

Svanberg spoke about new operators being added "in the near future"—which plainly would not

result in revenues in a quarter ending three weeks later.

### C.     Plaintiff Fails To Plead A Misleading Statement Regarding "Seasonal" Results

Finally, Plaintiff attempts to fashion a claim of securities fraud out of Svanberg's

repetition of the word "seasonal" in response to a question.  Once again, Plaintiff twists the actual

statement to suit his pleading needs.  The question and answer, in full, were:

> Matt Hoffman—Cowen and Company—Analyst: [] *Seasonally, the third quarter is a little
> bit weaker* for the networks business, historically, but in—again, in your comments you
> commented earlier on the professional services maybe being a little bit better here in the
> third quarter. *Could the overall corporate top line bump that trend, or are we expecting
> still a seasonal type of third quarter here*? Thanks.

> Carl-Henric Svanberg—Ericsson—President and CEO:  *Yes, we are expecting a seasonal
> third quarter*. And we also said that, as we did last year, that there is—we have a bigger
> proportion of larger projects now.  And larger projects tend to sort of be started more in the
> beginning of the year and finished at the end of the year.  So like last year we had a little bit
> of a more back-loaded second half, and I think that's still the comment we make.

(Kaye Decl. Ex. C, at 11 (emphasis added).)

Plaintiff argues that use of the phrase "seasonal third quarter" "primed the market to

expect" net income to *rise* in the third quarter (Pl. Op. 14), an argument that is plainly contrary to

the clear import of the statement.[4]  Fairly read, the question concerned whether the networks

---

[4]  Analyst reports written immediately following the conference show that the meaning of
"seasonality" was clear. *See* Lehman Brothers Equity Research report dated September 13, 2007,
Goldstein Decl. Ex. A, at 2 ("The next key event is the 3Q07 results announcement on October
25th.  Management has guided for a *greater than normal seasonal decline in revenues, due to the
timing of revenue recognition on a number of large contracts,* with 4Q07 revenues rising faster
than normal.  A weak Q3 again makes it difficult to project a strong near-term catalyst for the
stock.") (emphasis added); *see also* Natixis Securities report dated September 12, 2007, Goldstein
Decl. Ex. B, at 30 ("No miracles in Q3 07: Ericsson confirmed its usual seasonal trends for Q3 for
mobile networks (turnover down sequentially around 5%) and low capex in the US, with AT&T
currently focusing on the integration of SBC and Bellsouth.")  The Court may take judicial notice
of these reports.  *See Bovee v. Coopers & Lybrand*, 272 F.3d 356, 360-61 (6th Cir. 2001) (Court

business could be expected to be weaker in the third quarter, as it had been in the past. Svanberg

agreed that it could, and that larger projects tend to finish "at the end of the year" (*i.e.*, in the fourth

quarter). He was not asked to—and he did not—quantify this weakness.

Plaintiff also argues that the reference to a seasonal third quarter—even if it

referred to a decline—was inconsistent with the 38% drop in net income Ericsson subsequently

reported for 3Q07. (Pl. Op. 14.) Plaintiff is confusing apples with oranges. The question

concerned the expected performance of the networks business, not firm-wide net income. In fact,

Ericsson subsequently reported that networks sales for 3Q07 were 28.5 billion Swedish kroner

("SEK"), down only 2% from 29.2 billion SEK in 3Q06. (Ericsson's 2007 Third Quarter Report,

dated October 25, 2007, Goldstein Decl. Ex. C., at 2.)[5]

## II.    Plaintiff Fails To Plead Facts Establishing A Strong Inference Of Scienter

Plaintiff also has not alleged specific facts that give rise to a "strong inference" that

Defendants acted with an "intent to deceive." *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 127 S.

Ct. 2499, 2507, 2509 (2007). Plaintiff concedes that Defendants had no motive to commit fraud.

(Pl. Op. 10 n.7.) Thus, to establish scienter, Plaintiff must allege with particularity "facts that

constitute strong circumstantial evidence of conscious misbehavior or recklessness." *ATSI*

*Commc'ns Inc. v. Shaar Fund, Ltd.*, 493 F.3d 87, 99 (2d Cir. 2007). To satisfy this burden,

Plaintiff must, at a minimum, "specifically allege[] defendants' knowledge of facts or access to

---

"may consider . . . analysts' reports . . . even if not attached.") (citing *I. Meyer Pincus & Assoc. v. Oppenheimer & Co.*, 936 F.2d 759, 762 (2d Cir. 1991)).

[5] Plaintiff also takes issue with Svanberg's statement: "And larger projects tend to sort of be started more in the beginning of the year and finished at the end of the year. So like last year we had a little bit of a more back-loaded second half, and I think that's still the comment we make." (Kaye Decl. Ex. C, at 11.) This statement refers to a "back-loaded" *second half* of 2006, not, as Plaintiff suggests, to a back-loaded *year*. And the statement is unquestionably accurate, as net sales rose from 40.8 billion SEK in 3Q06 to 53.7 SEK in 4Q06. (Ericsson's 2006 Fourth Quarter Report, dated February 2, 2007, Goldstein Decl. Ex. D, at 1.) To the extent Plaintiff claims that the statement implied that the second half of 2007 would be back-loaded, that also proved to be true, as net sales rose from 43.5 billion SEK in 3Q07 to 54.5 billion SEK in 4Q07. (Ericsson's 2007 Fourth Quarter Report, dated February 1, 2008, Goldstein Decl. Ex. E, at 1.)

6

information contradicting their public statements." *Novak v. Kasaks*, 216 F.3d 300, 308 (2d Cir.

2000). Plaintiff fails to meet this burden.

> **A.** **Plaintiff Has Not Alleged Facts To Support An Inference That Defendants Knew Or Should Have Known That Any Of Their Statements Was False**

Plaintiff contends that Defendants had "actual knowledge" of results and

projections that conflicted with the statements made at the September 11 conference. (Pl. Op. 19.)

This is based upon vague allegations in the Complaint concerning the existence of unidentified,

unspecified "intra-company results and projections [and] internal Company reports" that allegedly

should have alerted Defendants to the falsity of their statements. (Pl. Op. 21 (citing Cmplt. ¶ ¶ 28-

29; 32; 34-38; 54; 55; 82).) Plaintiff, however, fails to identify a single specific report, meeting or

conversation in which Defendants obtained information that was inconsistent with their allegedly

false statements, and each of the Complaint's "red flags" concerns other companies, not Ericsson.

Under settled law in this Circuit, such generalized allegations are insufficient to establish scienter.[6]

In any event, even as described by Plaintiff, the unidentified reports do not

contradict any of Defendants' statements. The reports allegedly "demonstrated that revenues from

---

[6] *See Novak*, 216 F.3d at 309 ("Where plaintiffs contend defendants had access to contrary facts, they must specifically identify the reports or statements containing this information."); *San Leandro Emergency Med. Group Profit Sharing Plan v. Philip Morris Cos., Inc.*, 75 F.3d 801, 812 (2d Cir. 1996) ("Plaintiffs' unsupported general claim of the existence of confidential company sales reports that revealed the larger decline in sales is insufficient to survive a motion to dismiss."); *In re Loral Space & Commc'ns Ltd. Sec. Litig.*, No. 01 Civ. 4388 (JGK), 2004 WL 376442, at *11 (S.D.N.Y. Feb. 27, 2004) ("Because the plaintiffs have not alleged with sufficient particularity the nature, the content, the reliability, or the availability of the allegedly contradictory internal reports, the allegations concerning this information do not provide sufficient circumstantial evidence to raise a strong inference of the defendants' fraudulent intent."). The cases from outside this Circuit cited by Plaintiff (Pl. Op. 19) are not to the contrary. In *Serabian v. Amoskeag Bank Shares, Inc.*, 24 F.3d 357, 365 (1st Cir. 1994), scienter was established because the complaint "specifically identif[ied] the internal reports and the public statements," including "names and dates," that were contrary to the defendants' public statements. *Greebel v. FTP Software, Inc.*, 194 F.3d 185, 196 (1st Cir. 1999), simply cites *Serabian*.

[AT&T] would be closer to $1.5 billion to $1.8 billion," rather than $2.3 billion. (Cmplt. ¶ 55.) Defendants' statements were consistent with this decrease. *See supra* at 2.[7]

**B.    Plaintiff's Circumstantial Allegations Of Scienter Are Insufficient**

Plaintiff argues that even if he cannot show Defendants knew that their statements were false, such knowledge can be imputed to them because (a) the statements concerned "core operations," (b) the "earnings miss" was of such "magnitude" that Defendants must have been aware of it, (c) the CSs corroborate other allegations in the Complaint, and (d) there was a short time period between the conference and the disclosure of 3Q07 results. (Pl. Op. 19-22.) These allegations, either standing alone or considered together, are insufficient to establish scienter.

*First*, courts do not "routinely" impute knowledge of a company's "core operations" to high level executives for scienter purposes. *See Goplen v. 51job, Inc.*, 453 F. Supp. 2d 759, 773 (S.D.N.Y. 2006) ("'courts have routinely *rejected* the attempt to plead scienter based on allegations that because of defendants' . . . executive managerial positions, they had access to information concerning the company's adverse financial outlook'") (quoting *In re Health Mgmt. Sys., Inc. Sec. Litig.*, No. 97 Civ. 1865 (HB), 1998 WL 283286, at *6 (S.D.N.Y. June 1, 1998) (emphasis added)); *In re Read-Rite Corp. Sec. Litig.*, 335 F.3d 843, 848-49 (9th Cir. 2003).[8]

---

[7]  Plaintiff also refers to a note from Ericsson's Annual General Meeting, where Ericsson's shareholders resolved "to discharge the board members and the President from liability for the fiscal year 2007 in accordance with the auditors' recommendation." *See* Minutes of Ericsson Annual General Meeting of Shareholders, dated April 9, 2008, Goldstein Decl. Ex. F, at 4. Rather than being "an odd admission of guilt" (Pl. Op. 9 n.5), the fact that the Company's outside auditors found no issue only underscores the meritlessness of Plaintiff's claims.

[8]  Plaintiff's cases are not to the contrary. Rather, they indicate only that, in combination with other allegations that give rise to a strong inference of scienter, the fact that an alleged fraud involved the company's core operations is an additional factor to consider. In *City of Sterling Heights Police and Fire Ret. Sys. v. Abbey Nat'l, PLC*, 423 F. Supp. 2d 348, 361-62 (S.D.N.Y. 2006), scienter was established through seven different particularized allegations, including the defendants' admission that they "thoroughly reviewed" the key documents at issue. In *In re Atlas Air Worldwide Holdings, Inc. Sec. Litig.*, 324 F. Supp. 2d 474, 489, 492 (S.D.N.Y. 2004), scienter was established through, among other things, the fact that the company was forced to issue a "dramatic" restatement that revealed "systemic accounting abuses" and the testimony of ten CSs indicating that knowledge of "fundamental" accounting problems was widespread. And *Cosmas v. Hassett*, 886 F.2d 8, 10-11, 13 (2d Cir. 1989), involved a situation not present here: the defendants

Moreover, the statements alleged to be false do not concern "core operations." Plaintiff concedes that the 50 new contracts were expected to have a "negligible impact on Ericsson's bottom line." (Pl. Op. 5.) Also, as noted in our opening memorandum, Ericsson's *entire* U.S. sales represented less than 7% of its worldwide total (Def. Br. 15), and AT&T's business represented approximately 60% of the U.S. amount (Cmplt. ¶ 51; Pl. Op. 3)—or about 4% of Ericsson's total sales. These numbers do not approach the level of significance to a company's business that courts have deemed relevant to a scienter analysis. *See, e.g., Cosmas*, 886 F.2d at 11. Finally, it is absurd to suggest that Defendants' statements involved "core operations" because they concerned "the sale of communications networks and related services" (Pl. Op. 20)—under Plaintiff's definition, everything Ericsson does would be considered a "core" operation.

*Second*, there was no "earnings miss" of any magnitude related to the issues Plaintiff identified. Even if Defendants could be held responsible for knowing the difference between an alleged $2.3 billion "projection" for AT&T's annual revenue (a projection that was *not* made during the conference) and the $1.5-$1.8 billion in revenue cited by Plaintiff, the $500 million difference constitutes only 2% of Ericsson's total 2007 revenues. (Kaye Decl. Ex. B, at 4.)

*Third*, the mere fact that the CS allegations "corroborate other allegations in the complaint" (Pl. Op. 22) is irrelevant. Had the CSs corroborated *any* allegations *that raise an inference of scienter*, then they could be considered—assuming the sources were alleged to be in a position to possess the information. *See In re Atlas Air*, 324 F. Supp. 2d at 493. Here, however, Plaintiff does not allege that the CSs corroborate any of his scienter allegations.

*Finally*, "temporal proximity" between a statement and a later disclosure of inconsistent information is relevant only where the person making the statement can personally benefit from the short time period. *See, e.g., Mississippi Pub. Employees' Ret. Sys. v. Boston Scientific Corp.*, 523 F.3d 75, 79, 91 (1st Cir. 2008) (insider defendants alleged to have been

---

had a financial motive to commit the fraud, and the statements concerned what was by far the single biggest source of the company's revenue.

enriched by $332 million). Here, the Complaint does not allege that Svanberg or Sundstrom stood to gain any personal benefit from the alleged fraud.[9]

## III. Svanberg And Sundstrom Should Be Dismissed For Lack Of Personal Jurisdiction

Plaintiff asserts that Svanberg and Sundstrom had the requisite "minimum contacts" with the U.S. because they signed Ericsson's SEC filings—yet cites no law in support of this conclusory assertion. (Pl. Op. 23.) In fact, courts hold that such contacts, standing alone, are insufficient to confer general jurisdiction over a defendant. *See In re AstraZeneca Sec. Litig.*, 559 F. Supp. 2d 453, 467 (S.D.N.Y. 2008). Moreover, Plaintiff has not alleged that those SEC filings contain false statements, so they cannot form the basis for the exercise of specific jurisdiction over Svanberg and Sundstrom.

Plaintiff also contends that jurisdiction exists because the London presentation could "be listened to by investors all over the world." (Pl. Op. 24.) Again, Plaintiff fails to cite any support for this assertion. In fact, courts repeatedly hold that contacts that are much more frequent—and much more pointedly directed toward the forum than one isolated conference held in a foreign country—provide an insufficient basis for jurisdiction.[10]

---

[9]  Plaintiff contends that the Court can infer that Defendants were aware of 3Q07 results on September 11 because it was a few weeks from quarter-end and "only 5 weeks" before the results were announced. Courts have rejected similar arguments as being "no more than speculation." *Elam v. Neidorff*, 502 F. Supp. 2d 988, 995 (E.D. Mo. 2007).

[10]  *See, e.g.*, *Fox v. Boucher*, 794 F.2d 34, 37 (2d Cir. 1986) (stating that "[t]he mere possibility of foreseeable consequences in [the forum] does not give [the forum] *in personam* jurisdiction" and finding that a party's phone call into the forum was insufficient to confer jurisdiction); *Dale v. Banque Alliance S.A.*, No. 02 Civ. 3592 (RCC) (KNF), 2004 WL 2389894, at *2, *7 (S.D.N.Y. Oct. 22, 2004) (finding, *inter alia*, phone calls to the U.S. and an interactive website accessible from the U.S. constitute insufficient contacts to support jurisdiction); *American Fin. Capital Corp. v. Princeton Elec. Prods.*, No. 95 Civ. 4568, 1996 WL 131145, at *4 (E.D. Pa. Mar. 20, 1996) (noting that "federal courts have held that limited telephone or mail contacts which form the basis for the claim – especially where not initiated by the defendant – are insufficient to support personal jurisdiction over an out-of-state resident").

**IV.    Plaintiff Should Not Be Granted Leave To Replead**

Leave to amend should be denied "when the proposed amendments would not cure the defects." *Fezzani v. Bear, Stearns & Co., Inc.*, No. 99 Civ. 0793 (RCC), 2005 WL 500377, at *3 (S.D.N.Y. March 2, 2005) (citing *Acito v. IMCERA Group, Inc.*, 47 F.3d 47, 55 (2d Cir. 1995)). Here, Plaintiff's entire case rests upon statements made during one presentation, which was transcribed, and Plaintiff has had every opportunity to search the transcript and identify allegedly false statements and include them in his Complaint. *See In re Nokia Oyj (Nokia Corp.) Sec. Litig.*, 423 F. Supp. 2d 364, 409 (S.D.N.Y. 2006) ("plaintiffs cannot 'hedge their bets' by holding [] evidence back in the hopes of having another bite of the proverbial apple"). Moreover, there "is no indication that [Plaintiff] could replead the complaint so as to establish [] scienter," *Chill v. General Elec. Co.*, 101 F.3d 263, 272 (2d Cir. 1996). Accordingly, dismissal should be with prejudice because there is no basis to find that Plaintiff can cure the defects in his Complaint.

## Conclusion

For the reasons set forth above and in our opening brief, Defendants respectfully request that the Court dismiss the Complaint, in its entirety and with prejudice.

Dated:  New York, New York
        September 11, 2008

PAUL WEISS, RIFKIND, WHARTON
& GARRISON LLP

By: /s/Daniel J. Kramer

1285 Avenue of the Americas
New York, NY 10019
Telephone: (212) 373-3000
Fax: (212) 492-0020
dkramer@paulweiss.com

*Attorneys for Defendants*